IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DAVID R. PETE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 1:25-CV-00245-MAC-CLS |
| v. | § | |
| | § | |
| FACEBOOK DATA BREACH a/k/a/ | § | |
| META PLATFORMS, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION REGARDING JURISDICTION**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72. Now before the court is Defendant Meta Platforms, Inc.'s Motion to Dismiss, or in the Alternative, to Transfer (doc. #17). As explained below, the undersigned finds that, in the interest of justice, the case be transferred to the proper forum.

**I. Background**

On May 27, 2025, Plaintiff David R. Pete, proceeding *pro se* and *in forma pauperis*, filed his complaint against "Facebook Data Breach, now known as Meta Platforms, Inc." seeking "damages and injunctive relief" stemming from an alleged "massive breach affecting Plaintiff's private information between May 24, 2007 and December 22, 2022" which he claims resulted from Meta failing to "safeguard Plaintiff's personal data." (Doc. #1 at 1.) Plaintiff effected service of

1

process on Meta via United States marshal on June 23, 2025.[1]  FED. R. CIV. P. 4(c)(3).  That same day, Plaintiff requested the clerk of court to enter default under Rule 55 (doc. #12).  The clerk of court has not entered default in response to Plaintiff's request, and it should not do so.[2]

Meta filed the instant motion on July 14, 2025.  (Doc. #17.)  In it, Meta argues that this case should be dismissed under Rule 12(b)(2) as the court lacks personal jurisdiction over Meta, under Rule 8 because Plaintiff has not satisfied its pleading requirements, or under Rule 12(b)(6) because Plaintiff fails to state plausible claims for relief.  (Doc. #17 at 1–4.)  Alternatively, Meta asks this court to transfer the action to the Northern District of California under 28 U.S.C. § 1404 pursuant to a forum-selection clause in Facebook's Terms of Service.  (Doc. #17 at 23–24.)  Plaintiff's response largely fails to address Meta's motion, but Plaintiff does generally respond that he has alleged sufficient facts to state claims for relief, and that the case should not be transferred.  (Doc. #18 at 2.)  Though the court "need not wait for [a] reply or sur-reply before ruling on the motion," E.D. TEX. LOC. R. CV-7(f), Meta filed a reply (doc. #19) and Plaintiff filed a sur-reply (doc. #20), both of which were timely, so the court will have them for its consideration.

**II. Applicable Law**

"The Fourteenth Amendment's Due Process Clause limits [the] court's power to exercise jurisdiction over a defendant."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge whether the

---

[1] Though not entered on the docket until June 27, 2025, the filings reflect that service of process was effected on the 23rd (doc. #13).  Initially Plaintiff did not provide an address for service of process on Meta, so this court ordered him to do so (doc. #4).  The first address provided was incorrect (doc. #5), but after another order to provide an address (doc. #6), Plaintiff provided the proper address to effect service of process on Meta (doc. #7).

[2] For the clerk to enter default, the defendant must have "failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure."  *Sino Star Glob. Ltd. v. Shenzhen Haoqing Tech. Co., Ltd*., No. 22-CV-980, 2025 WL 1668216, at *1 (E.D. Tex. June 12, 2025) (citing FED. R. CIV. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).  So here the deadline to respond was July 14, 2025, FED. R. CIV. P. 12(a)(1)(A)(i), which is exactly when Defendant (though appearing earlier to contest the request of default (doc. #14)) filed the instant motion (doc. #17).  The requirements for the clerk to enter default are not met.

court's exercise of jurisdiction over them is consistent with due process. In diversity cases in this court, "the exercise of personal jurisdiction over a nonresident defendant must comport with both federal due-process requirements and the long-arm statute of Texas." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022). That analysis "permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Nunes v. NBCUniversal Media, LLC*, 582 F.Supp.3d 387, 395 (E.D. Tex. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant challenges personal jurisdiction under Rule 12(b)(2), it is the plaintiff's "burden of establishing that a defendant has the requisite minimum contacts with the forum state to justify the court's jurisdiction." *Danziger & De Llano*, 24 F.4th at 495. And when, as here, a court analyzes personal jurisdiction "without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Ethridge v. Samsung SDI Co.*, 137 F.4th 309, 313 (5th Cir. 2025). In assessing whether the plaintiff has met their burden, "the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Id*.

There are "two types of personal jurisdiction:" general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017). General personal jurisdiction permits a court to exercise jurisdiction over a defendant that is "at home" in the state where the court sits. *Id*.;

*Ford Motor Co.*, 592 U.S. at 358.  General jurisdiction "extends to 'any and all claims' brought against a defendant" in the courts of their home state.  *Ford Motor Co.*, 592 U.S. at 358–59.

"Specific jurisdiction is very different."  *Bristol-Myers*, 582 U.S. at 262.  For a court to exercise specific personal jurisdiction over a defendant, the plaintiff must show that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities with the forum State."  *Ford Motor Co.*, 592 U.S. at 359.  The defendant's minimum contacts "must be [their] own choice and not 'random, isolated, or fortuitous.'"  *Id*.  The inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  This relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State."  *Id*.  The "unilateral activity of another party or a third person is not an appropriate consideration."  *Id*.  Courts must only "look[] to the defendant's contacts with the forum State itself, not [their] contacts with persons who reside there."  *Id*. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").  Moreover, even if sufficient contacts exist, they must "arise out of or relate to" the cause(s) of action at hand.  *Bristol-Myers*, 582 U.S. at 262.

**III. Analysis**

In all cases and controversies, "the first and fundamental question is that of jurisdiction."  *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884).  Accordingly, the court must first assess whether Plaintiff has established "a *prima facie* case of personal jurisdiction."[3]  *Ethridge*, 137 F.4th at 313.

---

[3.] Meta claims that it prevails on its 12(b)(2) argument because Plaintiff waived it by "not respond[ing]." (Doc. #19 at 4 (invoking E.D. TEX. LOC. R. CV-7(d)).)  But Plaintiff is proceeding *pro se* and afforded the benefit of liberal construction.  *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013).  While Plaintiff does largely focus on subject-matter, not personal, jurisdiction in his response (*see* doc. #18 at 2), the court finds that Plaintiff responded to Meta's personal jurisdiction argument enough to avoid waiving the issue.  For instance, Plaintiff claims that Meta waived "any jurisdictional" defense by failing to raise it in its first responsive pleading.  (Doc. #18 at 1); FED. R. CIV. P 12(h)(1).  And though styled as a "venue" argument, Plaintiff responds that this court may hear the case because the Complaint lays out facts showing Meta's activities in Texas.  (Doc. #18 at 2.)  The court declines to dismiss this case on waiver, so it will analyze personal jurisdiction giving Plaintiff the benefit of liberal construction.

*A. General personal jurisdiction*

The court does not have general personal jurisdiction over Meta because Meta is neither "at home" nor "essentially at home" in Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014); *Goodyear Dunlop Tire Operations v. Brown*, 564 U.S. 915, 927–30 (2011). A corporation is "at home" wherever "it is incorporated or has its principal place of business." *Daimler AG*, 571 U.S. at 137. Here, according to Plaintiff, Meta "is a Delaware corporation with its principal place of business in . . . California." (Doc. #1 at 1, ¶5.) Meta is not "at home" in Texas. *Daimler AG*, 571 U.S. at 137. A corporation is "essentially at home" in every state it "engages in a substantial, continuous, and systematic course of business." *Id*. at 138. Its engagement must be "so 'continuous and systematic' as to render it essentially at home." *Id*. at 139.

The Fifth Circuit reserves such scenarios for "exceptional cases," *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022), as it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020); *see also Nunes*, 582 F.Supp.3d at 396. Here, Plaintiff describes Meta's corporate engagement in Texas as "maintain[ing] the Facebook platform" as well as "collecting and monetizing user data nationwide, including in Texas." (Doc. #1 at 1, ¶ 5.) This is insufficient. *See Russell v. Meta Platforms, Inc.*, No. 23-CV-193, 2024 WL 4800365, at *3 (N.D. Miss. May 29, 2024) (Since *pro se* plaintiff "made no allegation that Meta engages in systematic and continuous contacts with [the forum State]," the "exercise of jurisdiction over Meta would be improper.") (referencing *Ralls v. Facebook*, 221 F.Supp.3d 1237, 1244 (W.D. Wash. 2016)); *see also Nunes*, 582 F.Supp.3d at 396–97 (holding that "vague and overgeneralized" claims, such as "revenues from ongoing Texas-based operations are massive," without "any 'indication as to the extent, duration, or frequency of the contacts'" are "'insufficient to support'

5

even a *prima facie* case of general jurisdiction"). The court declines to exercise general jurisdiction.

### B. Specific personal jurisdiction

Plaintiff similarly fails to establish a *prima facie* case for specific personal jurisdiction. To assert personal jurisdiction over a nonresident defendant based on internet contacts, the court must first decide whether the defendant's website is "passive" or "interactive." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021). If passive, "jurisdiction is unavailable, full stop." *Id*. If the website "interacts with its visitors, sending *and* receiving information from them, [the court] must apply [the] usual tests to determine whether the virtual contacts that give rise to the plaintiff's suit arise from the defendant's purposeful targeting of the forum state." *Id*.

Here, Plaintiff alleges that Meta, through Facebook, "collected extensive personal information from Plaintiff." (Doc. #1 at 1, ¶7.) And though Plaintiff might not say it in as many words, his Complaint shows that Meta also sent information to Plaintiff, such as Facebook's Terms of Service. (Doc. #1 at 1, ¶6; 2, ¶21.) In any event, Meta's Facebook is certainly an "interactive" website. *Johnson*, 21 F.4th at 319–20. Thus, the court must now "apply [the] usual tests" and assess Meta's minimum contacts. *Id*. at 318.

Before analyzing Meta's contacts with Texas, the court must first discern what causes of action Plaintiff raises, and what conduct by Meta he alleges. *See Johnson*, 21 F.4th at 324 ("For specific jurisdiction, a plaintiff must link the defendant's *suit-related* conduct to the forum."). Admittedly, Plaintiff's pleading is scant. But he is proceeding *pro se*, so he is held to a "less stringent standard" and is provided the benefit of liberal construction. *Frazier*, 541 F. App'x at 421.

Plaintiff asserts six Texas-law-based causes of action against Meta: negligence, negligence per se, breach of contract, invasion of privacy, unjust enrichment,[4] and relief based on an alleged violation of the Texas Deceptive Trade Practices Act. (Doc. #1 at 2.) As to Meta's suit-related conduct, Plaintiff identifies the following:

- a "longstanding failure to safeguard Plaintiff's personal data" (*id.* at 1; 2, ¶¶24, 31);

- "design[ing], operat[ing], and maintain[ing] the Facebook platform," which involves "collecting and monetizing user data" including an "extensive" amount of Plaintiff's (*id*. at 1, ¶¶5, 7);

- a "failure to implement and maintain reasonable data security protocols" (*id*. at 1, ¶8; 2, ¶14);

- "not notify[ing]" Plaintiff of an alleged data breach (*id*. at 1, ¶10; 2, ¶13);

- entering a contract with Plaintiff via Facebook's Terms of Service (*id*. at 2, ¶21); and

- "receiv[ing] and retain[ing] benefits from Plaintiff's data" (*id*. at 2, ¶27).

At the outset, Plaintiff fails to sufficiently "link" most of this suit-related conduct to Texas. *Johnson*, 21 F.4th at 324. Plaintiff cannot merely allege potentially tortious conduct that may have affected him in this state; he must provide "facts showing [Meta] purposefully directed [its] conduct toward this forum." *Williams v. Licari*, 692 F.Supp.3d 647, 657 (E.D. Tex. 2023).

Meta's nationwide operation of Facebook alone is insufficient contact with Texas to warrant jurisdiction. The Fifth Circuit "expressly hold[s]" that "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021). As Plaintiff explains, Meta's operation of Facebook is a "nationwide" endeavor. (Doc. #1 at 1, ¶5.) But operating a website that is "accessible worldwide"—even "'a highly interactive'" one—is insufficient to confer

---

[4.] Though the court does not reach the merits of this claim, it notes that under Texas law "unjust enrichment is not a distinct independent cause of action." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). *See also Baxter v. PNC Bank Nat'l Ass'n*, 541 F. App'x 395, 397 n.2 (5th Cir. 2013).

specific personal jurisdiction in this forum unless the website expressly directs its suit-related conduct "at Texas [residents] as distinguished from [those] in other states." *Admar*, 18 F.4th at 787. Therefore, Meta's alleged failure to safeguard Plaintiff's data and to implement security measures is also too "attenuated" in its connection to Texas. *Walden*, 571 U.S. at 291. Even if Meta's data-security practices on Facebook are subpar, this conduct would not give rise to personal jurisdiction here because it is not aimed at only Texas users but all Facebook users.

Similarly, Meta's collection and monetization of its users' data (and any benefits derived therefrom) is not "targeted specifically to Texas." *Admar*, 18 F.4th at 787; *see also Boyd v. Cleara, L.L.C.*, No. 24-10609, 2025 WL 2082675, at *3 (5th Cir. July 24, 2025) (no personal jurisdiction over nonresident defendant who "reached into Texas to compile information about [the plaintiff]"). Again, Plaintiff admits that Meta's practices are "nationwide." (Doc. #1 at 1, ¶5.) Adding that they also occur "in Texas" does not show purposeful direction there. (*Id.*) *Williams*, 692 F.Supp.3d at 657–58; *Johnson*, 21 F.4th at 326; *Nunes*, 582 F.Supp.3d at 399–400.

Meta's alleged failure to notify Plaintiff about a purported data breach is also insufficient conduct to hale Meta into this forum. Plaintiff offers nothing to suggest that a data breach occurred other than a bare assertion that "throughout" a fifteen-year period, "unauthorized actors exploited [Meta's] insecure data systems" and "gain[ed] repeated access to Plaintiff's sensitive information." (Doc. #1 at 1, ¶¶7, 9.) Plaintiff has failed to plausibly allege that such a data breach occurred, and it would be inconsistent with due process to subject a nonresident defendant to jurisdiction based on a failure to act when they likely did not have a duty to act at all.[5]

---

[5.] Additionally, if there was a data breach that Meta failed to notify Plaintiff about, the non-notification alone would likely be insufficient contact with this forum. Texas courts have declined to attach personal jurisdiction when nonresident defendants make "fraudulent or negligent misrepresentations [to resident plaintiffs] through electronic media." *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 393 (Tex. App.—Dallas 2012, no pet.) (referencing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005)).

Further, the court notes that most of Plaintiff's alleged injuries stem from these "unauthorized actors" exploiting his personal data. (Doc. #1 at 1–2, ¶¶9–11.) But any effects Plaintiff suffered in the forum due to these unknown persons do not allow the court to exercise jurisdiction over Meta because a nonresident defendant may not be haled into court due to the "unilateral activity of another party or [] third person[s]." *Walden*, 571 U.S. at 284.

This leaves one potential contact with the forum—Facebook's Terms of Service (ToS). As Plaintiff points out (doc. #1 at 2, ¶21), and Meta admits (doc. #17 at 4), Plaintiff entered into a contract with Meta upon Plaintiff's acceptance of Facebook's ToS. A nonresident defendant may subject itself to jurisdiction by "deliberately . . . entering a contractual relationship centered [in the forum State]." *Ford Motor Co.*, 592 U.S. at 359. But the ToS is the only fact alleged by Plaintiff that could give rise to personal jurisdiction. Since "merely contracting with a resident of the forum state does not establish minimum contacts" without more, the court declines to exercise personal jurisdiction over Meta because Plaintiff accepted Facebook's ToS. *Danzinger & De Llano*, 24 F.4th at 500.

In sum, Plaintiff has not alleged sufficient facts to establish a *prima facie* case of personal jurisdiction. The court notes, however, that in Meta's own words, it "builds technologies and services that enable people to connect with each other, build communities, and grow businesses." (Doc. #17 at 4.) By no means does this court hold generally that Meta is not subject to personal jurisdiction in Texas. Instead, the court finds that exercising personal jurisdiction over Meta in this action would not comport with due process since Plaintiff failed to carry his burden.

*C. Transfer*

Typically, once jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. 506, 514 (1868). However, as granted by Congress, in civil actions such as this one, whenever the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought." 28 U.S.C. § 1631.[6]

There is a want of personal jurisdiction here, but the court finds that transferring this action is in the interest of justice. *Franco*, 3 F.4th at 792–95. First, Plaintiff is proceeding *in forma pauperis*, so transferring would allow him to maintain this action without being assessed another filing fee or having to move for pauper status again. Second, Plaintiff is also proceeding *pro se*, so transferring would serve justice by allowing his case an opportunity to be heard on the merits. *See Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (The Fifth Circuit has "adopted a policy in favor of resolving cases on their merits."). And third, transferring would enforce the forum-selection clause in Facebook's ToS.

In deciding whether a transfer is in the interest of justice, "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for Western Dist. of Tex.*, 571 U.S. 49, 63 (2013). A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id*. Further, a forum-selection clause waives Plaintiff's "right to challenge the preselected forum as inconvenient or less convenient." *Id*. at 64. Thus, the court may only consider the public interest factors here. But

---

[6.] The parties only briefed transfer under 28 U.S.C. § 1404. But that statute only applies when venue is improper. Here there is no jurisdiction, which usually precludes exercising any authority—save § 1631. And despite its absence in the briefing, the court may properly invoke § 1631 here. *See Franco v. Mabe Trucking Co.*, 3 F.4th 788, 796 (5th Cir. 2021) (Courts "have applied [§ 1631] to transfers even when the parties did not move under § 1631" and even where "the transferring court did not mention § 1631 in its transfer orders.").

10

there is a "strong presumption in favor of the enforcement of mandatory forum-selection clauses" and Plaintiff's argument against transfer (docs. #18 at 2; #20 at 5) does not meet the "heavy burden" required to overcome that presumption. *Davis v. Meta Platforms, Inc.*, No. 4:22-CV-1001, 2023 WL 4670491, at *9 (E.D. Tex. July 20, 2023) (quoting *PCL Civ. Constructors v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020)).

As discussed, Plaintiff and Meta entered into a contract via Facebook's ToS. The ToS is referenced in Plaintiff's Complaint (doc. #1 at 2, ¶21), and Meta entered the ToS into the record by attaching it to its motion to dismiss (*see* doc. #17-2). *Ethridge*, 137 F.4th at 313; *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). In the ToS, Plaintiff and Meta "agree[d] that any claim, cause of action, or dispute between [them] that arises out of or relates to these Terms or [Plaintiff's] access or use of the Meta Products [including Facebook] shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County[, California]." (Doc. #17-2 at 12.)

Sister courts in this circuit and this district consistently enforce Facebook's ToS. *Wise Guys I v. Meta Platforms, Inc.*, No. 23-CV-217, 2023 WL 8434452, at *2 (N.D. Tex. Dec. 4, 2023) ("Meta's forum-selection clause is mandatory and valid."); *Moates v. Facebook, Inc.*, No. 21-CV-694, 2022 WL 2707745, at *5 (E.D. Tex. June 13, 2022) (enforcing Meta's forum-selection clause as "valid" and "mandatory"), *R. & R. adopted*, 2022 WL 2705245 (E.D. Tex. May 16, 2023); *Davis*, 2023 WL 4670491, at *10 (same). Plaintiff also relies on the ToS's enforceability as a basis for many of his claims (*see, e.g.*, doc. #1 at 1, ¶6; 2, ¶21). Recognizing the terms in this contract serves justice. After all, "'the interest of justice' is served by holding parties to their bargain" in "all but the most unusual cases." *Atl. Marine Const. Co.*, 571 U.S. at 66.

11

<u>Transfer authority</u>

The undersigned may only determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72. Here, transferring would be non-dispositive. Sending a case to the proper forum would not dispose of the case, and thus doing so is within the authority of the undersigned magistrate judge. *See* Order, *Karam v. Meta Platforms, Inc.*, No. 24-CV-720, slip op. at 1 n.1 (W.D. Tex. Feb. 10, 2025) (magistrate judge transferring case from Western District of Texas to Northern District of California and noting that "district courts in this Circuit have held that a transfer of venue is a non-dispositive decision"), ECF No. 24; *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 698–99 (9th Cir. 2022) (holding that a transfer order is non-dispositive and that "[t]he magistrate judge had jurisdiction to" transfer a motion to quash from the Southern District of Florida to the Northern District of California).

\*   \*   \*

Accordingly, this case should be transferred to the Northern District of California. The undersigned will enter an appropriate order so providing.

**SIGNED this the 15th day of September, 2025.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE